## SOUTHERN EXPRESS CO. *v.* HEBER CRAFT.

1. CORPORATIONS—SERVICE OF PROCESS ON.—The service of process on a corporation, other than a railroad or telegraph company, must be on the president or other head of such corporation, or its cashier, treasurer, secretary, etc., or in such other manner as the court may direct. Service on an "agent" is not sufficient as either an actual or a constructive service, because not showing such description of officer or agent as is required by statute to make the defendant amenable to the jurisdiction of the court.

2. New Trial at Law—When Granted by Court of Equity.—A new trial at law will not be granted by a court of equity where the party applying for it has had a fair opportunity for testing his rights, and has failed to do so. But a party against whom judgment by default has been taken upon no sufficient service of process, is entitled to perpetual injunction against such judgment and a new trial in the court of law.

Appeal from the chancery court of Marshall county. Clayton, J.

The Southern Express Company, appellant, filed its bill in the chancery court of Marshall county, in which it alleges that Heber Craft, the appellee, at the March term, 1866, of the circuit court of Marshall county, Mississippi, recovered a judgment against said appellant, for the sum $207, etc. That execution thereon had issued, etc. It is alleged that complainants had no notice of the suit in which the judgment was rendered; that the process in said suit was served on one Jones as agent of said "Express Company," who, in fact, was not its agent, etc., and that therefore complainants had never had any legal service or notice of the pendency of said suit. That said Company had a complete legal defense to said suit, which would have been set up had it had notice of the pendency of said suit. Said defense is as follows: In 1861, or 1862, one Ballard, then agent of the company, received from said Craft, $165 to be sent to one Duncan at Bowling Green, Kentucky; that the same was so sent, but was never called for by said Duncan or any one else, but was finally sent to one Davis, the cashier of said company at Nashville, from whose possession it was taken by the military authority of the United States; that said company had protected itself, by notice, from liability as common carries for losses resulting from the public enemies, the casualties of war, etc. The bill prayed for an injunction, which was granted.

The answer admits the institution of the action at law, and the recovery of judgment in favor of Craft, but insists that the said Jones was the legally authorized agent of said company, and that said judgment is conclusive, etc. Upon final hearing, a decree was rendered for the defendants below.

The proof shows, that, although said Jones did sign his name in ordinary transactions as agent for the company, he, in fact, never was such agent; that he was employed as clerk to transact the business of House, who was the agent, and the only agent that the company had at that place. The deposition of Joel Davis, the cashier at Nashville, establishes the loss of the money through the instrumentality of the military authorities of the United States.

The appellants assigned the following errors:

The court below erred in rendering a decree dissolving this injunction and dismissing the complainants bill.

*Featherston, Harris, and Watson,* for plaintiff in error. ·

The only question presented is, did the appellant have due notice of the suit instituted by Craft against it? It is true that several witnesses testify as to the fact that they dealt with and treated T. D. Jones as the agent of the Southern Express Company, and that said Jones signed his name, at various times, to receipts, as agent of the same; but it no where appears that he ever was such agent, or that said company ever knew that he was pretending to or acting as such. Jones says in his testimony, " I was attending to the business of the Southern Express Company for J. J. House;" and in his answer to the third interrogatory, he says; " I was acting for House; he was agent for the company;" but in his answer to the fifth interrogatory he says: "I always signed my own name to the receipts as agent for the company;" in his answer to the sixth interrogatory, he says: " The company knew nothing of my acting as agent that I knew of, except seeing the receipts I put out. The slips which I made out to which I signed my name as agent, were by me given to the messenger of the company, to be left at the office of the place where the goods were to be forwarded," etc. Upon the testimony of this witness alone must the court look for a solution of this question of notice; for notwithstanding there was quite an array of witnessess produced to show that he acted as such agent, and they so recognized and dealt with

him, not one of them intimates even that his conduct and dealings were known to the said express company, either directly or indirectly. In his answer to the second cross-interrogatory, he says : " It is customary for agents to have clerks who perform the duties of their principals," and that he acted as such for House during the entire time. In his answer to fifth cross-interrogatory, he says : " I have made all the monthly settlements made while House was agent, which ran through a twelvemonth, and it is my impression that I always signed the settlements for J. J. House, in his name, though I am not certain."

Again, who says that the said messenger of said company ever performed his duty, and where is the evidence to show that the messenger of the company ever left the slips to which Jones refers, at the proper offices or that the reporting officer or superintendent of the company ever saw them? House swears that he was the agent of the company at Holly Springs, and that Jones was his clerk. He further says, in answer to fifth interrogatory : " Everybody must have known that I was the agent for the company and no one else was." Jones says, as already referred to, that it was his impression that all of the monthly settlements were signed by House as agent. In this he is not only not contradicted by any one, but is fully sustained by House in his answer to interrogatory seventh. In summing up the whole case, as presented by the testimony, the true and only satisfactory conclusion which can be arrived at is, that Jones was simply acting as the clerk of House the agent of the company, and that in all of the transactions with the company, House's name, alone appeared as agent, and there is no proof to show that the company ever knew that Jones either represented himself as agent or pretended to act as such. From the foregoing it follows that the company having had no notice of the suit, the judgment is an absolute nullity.

*Walter & Scruggs*, for defendant in error.

We insist that Jones was the recognized agent of the

plaintiff in error at the time of the service of process upon him, and that such service is binding upon his principal. The plaintiff in error is a common carrier, a corporation acting only through its agents. The proof shows that immediately after the surrender, House, by verbal contract, was appointed agent at Holly Springs; this appointment was never made public; that Jones immediately took charge of the business, transacted all of it, signed his own name to receipts for money and other valuables, received and shipped by said company; that these receipts were forwarded on and monthly examined by the superintendent of the company; that he had been pursuing this course from January, in 1865, to sometime after the service of process upon him, more than eighteen months. The proof further shows that he was recognized by the business men of Holly Springs as the agent, treated as such, and that the sheriff served the process upon him because he was the reputed agent; that he did not deny his agency at the time of the service of process; and the fact is no where disclosed that House was the agent until after judgment and the sheriff is proceeding to make the money thereon.

"Agents can be appointed by implication from the recognition of the principal or from his acquiescence in the acts of the agents. Story on Agency, p. 65. Such appointments are very familiar in all the common business of life. " When one of two innocent persons must suffer by the misconduct of a third person, that party shall suffer, who, of his own acts and conduct, .has enabled such third person, by giving him credit to practice a fraud or imposition upon the other party." Story on Agency, 72, and notes. Jones had been acting as such agent for over a year, and monthly his acts were examined and the knowledge brought home that he was signing his name to all receipts as agent, and the said company not only not dissenting therefrom, but acquiescing in it. Had Jones given his receipt for a sum of money to be transmitted to a certain point, and the money lost, could the plaintiff in error avoid repaying the same upon a plea that

Jones was not its agent? This question, we insist, has been settled in the case of Kelly v. Burns, 41 Miss., 339. The plaintiff in error acquiesced in the acts of Jones for over a year, during which time the process was served on him, and such acquiescence has concluded it. If Jones was the agent, the service of process on him is binding on the company. "A recognition of the acts of an agent by his principal is equivalent to an original grant of authority." Com. v. Penn, Pet. C. C. R., 496; Loraine v. Cartwright, 3 Wash. C. C. R., 151.

The plaintiff in error is a common carrier for hire. The record shows that its business was an extensive one. For any loss of valuables committed to its care it is to be held responsible. The record shows further this state of facts, that here was a man acting as the agent of said common carrier, professing to bind it by receipt daily given for large sums of money, all this with the full knowledge of the plaintiff in error, and the very first liability that attaches from the acts of said agent, the fact is for the first time disclosed that he was never appointed agent. We submit that the case of Kelly v. Burns, 41 Miss., settles the law in this case.

SIMRALL, J.:

The Southern Express Company, a body corporate, exhibited its bill in the chancery court of Marshall county, against Heber Craft, asking that a judgment at law, recovered by Craft against it, might be set aside, or perpetually enjoined.

The judgment was recovered at the March term, 1866, of the Marshall county circuit court, by default.

The equity set up in the bill is, that the company had no actual notice of the pendency of the suit, and had a meritorious defense to the claim of Craft, which it had no opportunity of making in the suit at law. The averment of the bill is, that the summons in the suit at law was executed on one "T. Jones, agent for the express company," but that Jones was not agent for the express company, which, in fact, had no notice or information of the suit. The bill further alleges that the company's servant received, at Holly Springs, from said

VOL. I—33

Craft, a sum of money to be transported to one J. D. Duncan, Bowling Green, Ky. That the money, as complainants are informed and believe, was not called for by Duncan, at Bowling Green. But on the fall of that place, and the retreat of the Confederate forces southward, this package, with others, was transmitted to the office at Nashville, and that whilst there, was taken into possession by the military authorities of the United States.

It is urged by counsel for plaintiff in error, that the service on Jones was not a service on the express company, and therefore the judgment is void. Code, art. 6, p. 296, prescribes the mode of service on corporations. The writ "may be served on the president or presiding officer, the cashier, secretary, or treasurer; if no such person be found, notice may be posted at the door, or place of the business of the corporation." When so executed, by the next succeeding section, the "defendant (corporation), shall be considered in court, and the action may proceed as actions against natural persons." By the act of 10th February, 1860, acts, p. 422, suits against corporations shall be commenced in the county where the principal office or place of business may be. But against railroad and telegraph companies, in the county where the cause of action arose. Process against a corporation shall be executed on the "president or other head of the corporation, cashier, secretary, or treasurer, etc., or *in such other manner as the court may direct.*"

In suits against railroad and telegraph companies, in another county than where the principal office or place of business is located, process may be sent for execution to the county of the principal office or place of business. Such companies not having their principal office in this state, may appoint an agent or attorney in the several counties through which their road or line passes, to accept service. And if no such agent or attorney be appointed, the company may be sued by attachment, either for torts or debts, etc.

Art. 6 of the Code (above quoted), was further amended the 7th of December, 1863, (acts 1863, page 162), by allowing

process against a railroad company, to be served on "the depot agent, or any other agent, or attorney of the company, in the county where suit may be commenced."

It will thus be seen that the most important changes made by the acts of 1860 and 1863, have reference to the venue of suits against railroad and telegraph companies: .First, by the act of 1860, allowing suits in *personam*, against these companies in the county where the cause of action arose. The process, however, to be sent to and served in the county of the principal office, or place of business. If non-resident. corporations, however, they could appoint the agent in the several counties traversed by their roads or lines, to accept service. The further enlargement was made by the act of 1863, allowing service of process against a railroad company on a depot or other agent of the company in the county where the suit was brought.

The act of 1860, declares that the process against a corporation shall be served on the president or other head of the corporation, cashier or treasurer, etc., or as the court may direct. The Southern Express Company not being a railroad or telegraph company, service on it must be in the mode just quoted. The service on "Jones, agent," does not necessarily show that he was either the head of the corporation, its president, cashier or treasurer. Such service would not warrant a judgment by default final against the company. If the company had entered an appearance to the suit, it would have been bound to that act, and thereby voluntarily submitted itself to the jurisdiction of the court.

In these personal actions against corporations, the safe rule is to require that the service shall show every fact to bring it within the statute. It must appear to the court that the service was made on the description of officer or agent, pointed out in the statute, in order to make the corporation amenable to the jurisdiction, and to authorize a judgment by default against it.

It was proved in the cause that Jones was not so much as the agent of the company, but the clerk of one House, who

was the "agent" appointed by the company, at Holly Springs. Jones states in his deposition, that he gave no notice of the suit to the express company. It is made reasonably clear that the company was ignorant of the pendency of the suit, and rendition of the judgment. The testimony of the cashier of the company, at Nashville, tends strongly to show a state of facts that exonerates the company from any liability to Craft, to-wit: That the package of money was turned over after the fall of Nashville, on the 17th of February, 1862, by the money clerk to the cashier. His impression was that it had been returned from Bowling Green, etc. This with other effects in the office was taken possession of by the military authorities of the United States.

The loss of a package by a common carrier in these circumstances, by *vis major*, exonerates him from all responsibility to the owner. This has long been the rule of the common law.

The doctrine of the equity courts is, that a new trial will not be granted, when the party had a fair opportunity of making his defense at law, but failed to do so. Where there has been a good constructive service of the summons, but actual notice of the suit did not come to the complainant until too late to make his defense at law, a new trial will be granted if a meritorious defense be set up in the bill.

The view which we have taken of the service in this case, is that it was neither actual nor constructive. It did not bring the express company under the jurisdiction of the court, and did not authorize the rendition of any judgement whatever. In Mellons v. Newell, 7 S. & M., 399, the bill was brought for a new trial on the ground of a want of notice of the pendency of the suit. The answer denying the want of notice, and there being no proof, the bill was dismissed without prejudice, " as there had been no trial on the merits."

The specific prayer of relief asked in the bill is, that the judgment be perpetually enjoined. This, we think, the apellant is entitled to. But we are also of opinion, that inasmuch

as both parties are now in court, the merits of the claim, and the defense should be passed upon by a jury.

This would be more consonant to equity, than to require Craft to bring his suit *de novo* at law. We are authorized to do this, under the general prayer, " for other and further relief." Wherefore, we reverse the decree of the chancery court, with directions to perpetuate the injunction of the judgment at law, and to award a new trial of the suit, with permission to the parties to use the depositions in this case as testimony on the trial, and such other evidence as either party may see fit to adduce.